ANDREW D. MELOY & CO. v. DONNELLY et al.

(Circuit Court, D. Connecticut. December 30, 1902.)

No. 523.

1. CONSPIRACY—FRAUD—COMPLAINT.

A complaint for conspiracy alleged that defendants jointly confederated to fraudulently induce plaintiff to exchange stock for certain real estate belonging to one of the defendants; that three of the defendants, who ostensibly acted as plaintiff's agents, in fact represented the real estate owner, and fraudulently stated to plaintiff that the land was worth $48,800, and that two other defendants were conservative appraisers. acquainted with the property, who would appraise the same; that such

defendants executed a written appraisement valuing the property at such sum, though it was not worth more than a third thereof, with intent to deceive and defraud plaintiff, and that representations of the owner as to a reason for selling were substantiated, defendants, ostensibly acting as plaintiff's agents, intending to induce plaintiff not to make an investigation of the value of the property, by reason whereof, plaintiff exchanged the stock for the property without such examination; and that the owner's agent received 600 shares thereof as his share of the profits of such conspiracy. *Held*, that the complaint was not demurrable, as against any of the defendants, on the ground that the fraud alleged was a mere expression of opinion as to value.

At Law.

Arthur L. Shipman and G. Edward Mills, for plaintiff.
Henry G. Newton and A. D. Penney, for defendants.

PLATT, District Judge. This is an action in tort, demanding damages resulting from a conspiracy on the part of the defendants to cheat and defraud the plaintiff by certain alleged false and fraudulent acts respecting certain real estate situated in New Haven. The alleged wrongdoing may be summarized as follows: Plaintiff is a New York corporation, dealing in bonds, stocks, securities, etc. Defendants are citizens and residents of New Haven, in the state of Connecticut. About January 1, 1902, said Donnelly owned certain real estate in New Haven. Crofutt, Church, and Calhoun were agents of the plaintiff. Scoville was a real estate agent, doing business as an appraiser. Phelps was a builder. Moorhead was a real estate agent. About January 6th they conspired and agreed together to cheat and defraud the plaintiff out of certain stocks in the manner hereinafter set forth. Crofutt, Church, and Calhoun, acting ostensibly for the plaintiff, but in fact for Moorhead and Donnelly, told the plaintiff that the real estate was worth $48,800; that it ought to rent for $4,000 per year, and that the reason why it was not so rented was that the former owner was an old lady, who objected to all tenants but those of a certain character; that the property was increasing in value, and had been doing so for some years, and would command a ready sale in the market. All this was false, and known to the five defendants mentioned last to be false, and was told to the plaintiff to obtain from it 3,000 shares of a certain stock in return for the property. The stock was worth $5 per share, and more. To further the scheme, said five defendants procured Phelps and Scoville to appraise the property at $48,800, and told the plaintiff that Phelps and Scoville were conservative appraisers in the city of New Haven, and in no way interested in the transaction, which the five knew to be false. On or about January 7, 1902, Scoville and Phelps signed an appraisal to the effect that the property was worth $48,800, and said appraisal was delivered to the plaintiff by the five defendants. The appraisal was fraudulent and excessive, and put the value about three times too high, and was done by "defendants for the purpose of deceiving, cheating, and defrauding the plaintiff out of the ownership and possession of said shares of stock." To further carry out the scheme, Donnelly told the plaintiff that the property was easily worth the $48,800, and that his reason for sacrificing it was that he was a contractor, and needed ready

money.  Crofutt, Church, and Calhoun backed him up in his statements, all the time pretending to be acting for the plaintiff, thereby preventing the plaintiff, and intending to prevent the plaintiff, from making an intended investigation regarding the value.  Plaintiff relied upon the false representations of the defendants, and turned over the stock for the property.  The property was never worth $48,800, and is now worthless.  Moorhead got 600 shares of the stock "in consideration of his share of the profits, of and in pursuance of said conspiracy between the remaining defendants to defraud plaintiff."  On discovering the fraud, the plaintiff, on April 14, 1902, demanded the stock, and tendered Donnelly a deed of the land, Donnelly and Moorhead refused to give back the stock, and Donnelly refused to accept the deed.  Plaintiff claims $17,000 damages.

Each defendant has demurred on the ground that the only act charged against him is that he expressed an opinion as to the value of the real estate which gave an excessive valuation.  Gustafson v. Rustemeyer, 70 Conn. 132, 39 Atl. 104, 39 L. R. A. 644, 66 Am. St. Rep. 92, is cordially accepted as containing a very clear and comprehensive statement of the true rule, and exceptions thereto, as to the importance in evidence of estimated values of real estate.  Even a casual reading of the complaint, however, settles the demurrer in the negative as to every defendant except Scoville and Phelps, and it is surely unnecessary to specify the reasons for reaching such a conclusion.  Giving Scoville and Phelps the benefit of every doubt, it is clear that the plaintiff says that they, having been held out to the plaintiff as conservative real estate appraisers, signed a false and excessive appraisal, and that the appraisal was obtained by the other defendants for the purpose of carrying out their fraud, and was used for that purpose.  If Scoville and Phelps signed a false and excessive appraisal, how can it benefit them to ask the court to imagine that they did not know what use was to be made of the evidence furnished by their deliberate action?  Their profession, advantages, and capacity entitled their judgment to far greater weight than that of the ordinary citizen.  They were peculiarly well fitted by training and experience to express opinions upon values of real estate.  They were neither vendors nor vendees.  Their signatures, appended to a document containing excessive valuations, which was put under the control of the other defendants, gave the others an added opportunity to work great harm.  Such a document could be used effectively to deceive a distant plaintiff, who was led into a position of fancied, but false, security by the connivance of the others, several of whom were in a position which naturally evoked special trust and confidence.

It is alleged that the property was only worth one-third of the appraised value.  It is hardly reasonable that experienced appraisers, acting with honest purpose, should fall so far short of the actual worth. When local controversies arise, and when any one of numberless motives impel, it is easy to find witnesses who will swear up values, and others equally worthy who will swear the same values down, and the greater the local agitation, and the more important the matter at stake, the greater the diversity; but looking at the allegations of the complaint in the case at bar, if there be eliminated from the face of the

papers a purpose to join in a conspiracy to overreach and injure the confiding absentee, no sound reason can be advanced to account for such a glaring discrepancy. It would seem that it is plainly the duty of Phelps and Scoville, as well as the other defendants, to make full and complete answer to the charges preferred against them. It is inconceivable that they can seriously expect to be released from all the consequences of their action before the disputed facts have been thoroughly presented and duly weighed in the balances.

Each demurrer is overruled, with costs.